# 24 CV 6276

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

Michael Ugwu,

                Plaintiff,        Case No:

       v.

Uber Technologies Inc.,

                Defendant.
------------------------------------------------X

## COMPLAINT AND JURY TRIAL DEMAND

1.    Please TAKE NOTICE that Plaintiff, Michael Ugwu (hereinafter also referred to as "Plaintiff"), brings action against the Defendant, Uber Technologies Inc., (hereinafter also referred to simply as "Uber" or "Defendant"), and states as follows:

## INTRODUCTION

2.    Plaintiff brings this action against his former employer Uber Technologies Inc., to seek redress for unlawful and discriminatory discharge from his employment for the false and pretextual reasons that he was guilty of sexual misconduct with his female patrons.

3.    Plaintiff demands that all issues in this case be tried by a jury of his peers in accordance with the Seventh Amendment to the U.S. Constitution and Rule 38(b) of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE ALLEGATIONS.

4.    This court has jurisdiction over this action under 42 U.S.C.A. s.s. 12101 et seq. and under 28 U.S.C.A. s.s. 1331 and 1343(4). The unlawful employment acts in this case were committed wholly or in part, within the territorial jurisdiction of this court. Defendant may likely contend that it is not a covered employer. Upon information and belief, Defendant employed 15 or more employees on its payroll for 20 or more calendar workweeks in either the

1

current or preceding calendar year (29 C.F.R. § 1630.2(e). At all times material to this action, Defendant maintained an office from which it carried on business operations in the City of New York, within the territorial jurisdiction of this court, at 175 Grenwich Street New York, NY 10006.

5.      The Plaintiff a former driver rideshare participant  brings this action against defendant, to seek redress for unlawful and discriminatory discharge from his employment for the false and pretextual reasons that he had engaged in sexual misconduct against his passengers who were patrons of the ride share Defendant, none of which was ever proven to have occured.

6.      In breach of statute, Plaintiff was unlawfully summarily discharged. Plaintiff suffered irreparable loss and damages and has to date, despite good faith efforts, been unable to secure an equivalent employment.

## PROCEDURAL REQUIREMENTS

7.      Plaintiff filed a timely charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and brings this action within ninety (90) days of the receipt of a Notice of Right To Sue, issued by the EEOC  on 5/30/2024, a true and accurate copy of which is attached hereto **as Exhibit "A".**

## FACTS

8.      Plaintiff has been discriminated against in his employment as a driver employed by Defendant. He was employed from  September 2015 to July 2023, when he was unlawfully discharged by unjustifiably deactivating him and denying him access to the Defendant's App. Plaintiff last earned $38,995.79 per annum.

2

9.      Plaintiff's job duties were to convey passengers who order rides through Defendant's Rideshare platform.  Uber Technologies Inc., uses a rating system of 1 -5 to monitor its driver's progress and performance and at all times material, Plaintiff always maintained an average in the neighborhood of 5 points rating.  On or about JuLY 27, 2023, Defendant Uber Technologies Inc., communicated a request to Complainant for a telephone conference which Plaintiff obliged. In the ensuing conference, Defendant leveled against Plaintiff an unfounded allegation of discourtesy reportedly laid by a passenger / patron(s) against Plaintiff. Plaintiff strenuously denied the same and sought further particulars thereof, including a police incident report of the crime, which respondent did not furnish, simply stating that the matter would be further investigated, but without more, the next day, Plaintiff was deactivated.

All protestations by Complainant were unheeded, including a formal letter addressed to the company to which Complainant has, to date, not received a response.

Upon information and belief, the unfounded and false allegations were pretexts to justify a predetermined decision to discriminate against Plaintiff by terminating Plaintiff to offer Plaintiff's position to a favored individual of a preferred race, gender, sex, national origin, religion and/or sex.

Complainant has suffered loss and damages.

## Discrimation is Forbidden by Law:

Race discrimination involves treating someone  unfavorably because he/she is of a certain race or because of personal characteristics associated with race (such as hair texture, skin color, or certain facial features). Color discrimination involves treating someone unfavorably because of skin color complexion. The law forbids discrimination when it comes to any aspect of

3

employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, and any other term or condition of employment and it is unlawful to harass a person because of that person's race or color. Race/Color Discrimination and Employment Policies/Practices illegal if it has a negative impact on the employment of people of a particular race or color and is not job-related and necessary to the operation of the business. Any policy imposed by employer that is not related to the job and in effect disproportionately harms employment opportunities based on race or national origin, howsoever pretextually practiced, is unlawful.

## PLAINTIFF'S DISCHARGE

10.     On July 27, 2023, Plaintiff was deactivated, meaning that he was summarily discharged and thenceforth, was unable to access the rideshare platform of the Defendant and could no longer accept patrons on the rideshare platform.

## PRETEXT

11.     The alleged crimes of sexual misconduct were not and could not be substantiated. It was not even investigated or documented except for Defendants agents merely mouthing it.

12.     The unlawful discharge did not even meet the low bar threshold set by Defendant for discharge of employees. There was no evidence of sexual misconduct or even discourtesy presented or established against Plaintiff; there was no evidence of a hearing to determine the truth or otherwise of the allegations of misconduct leveled against Plaintiff; and there was record that employer complied with the collective bargaining agreement in the discharge of Plaintiff. Those allegations of infractions by Plaintiff were deliberately falsely lodged against Plaintiff to stack the deck and justify an impending wrongful discharge of plaintiff.

4

13.    Every assertion of misconduct alleged against Plaintiff was false.

## FIRST CLAIM FOR RELIEF
### (Uber's Per Se Violations of the NYCHRL)

### Violations of Title VII of the Civil Rights Act of 1964; and Civil Rights Act of 1991.

14.    Plaintiff repeats realleges all the paragraphs numbered 1 - 13 hereinabove as if each were individually set forth and alleged separately hereafter.

15.    The NYCHRL, N.Y.C. Admin. Code § 8-107(11-a)(b)(i)-(iii), requires that Uber, before terminating employment with current driver or declining employment to Plaintiff in New York City based in whole or in part on his perceived criminal history, (a) perform an Article 23-A individualized analysis; and (b) provide Plaintiff with: (i) a written copy of his background check containing that criminal history, and (ii) a written copy of the Article 23-A analysis (or equivalent Fair Chance Act Notice), including any supporting documents that formed the basis for the adverse action. After giving Plaintiff the required documents above, Uber must then give him no less than three business days to respond while holding the position open.

16.    Uber failed to perform an individualized Article 23-A analysis as to Plaintiff and failed to provide him with any of the required documents, including written copies of his background check or Article 23-A analysis. Uber also failed to keep Plaintiff's driver position open for at least three business days after providing him the required documents so that he would have an opportunity to respond.

17.    It is an independent per se violation of the Fair Chance Act provisions of the NYCHRL for Uber to bar Plaintiff from its labor platform based on his criminal history before

5

completing the Fair Chance Act process, as outlined above open for at least three business days after providing him the required documents so that he would have an opportunity to respond.

18.    It is an independent per se violation of the Fair Chance Act provisions of the NYCHRL for Uber to bar Plaintiff from its labor platform based on his criminal history before completing the Fair Chance Act process, as outlined above.

19.    It is an additional independent per se violation of the Fair Chance Act provisions of the NYCHRL for Uber to fail to provide to Plaintiff with a written copy of the background check it used to determine whether to bar him from its labor platform.

20.    It is an additional independent per se violation of the Fair Chance Act provisions of the NYCHRL for Uber to fail to provide to Plaintiff with a written copy of the Article 23-A analysis it should have conducted but failed to conduct.

21.    It is an additional independent per se violation of the Fair Chance Act provisions of the NYCHRL for Uber to fail to keep Plaintiff's position open for at least three business days after providing him the required documents.

22.    By failing to do any of these things, Uber has committed four independent per se violations of the Fair Chance Act provisions of the NYCHRL against Plaintiff.

23.    Uber took adverse action against Plaintiff  by barring them from its labor platform based in whole or in part on his percieved criminal history without complying in any respect with the NYCHRL.

24.    As a result of Uber's actions, Plaintiff has been deprived of his rights and have lost income, earnings, and other benefits.

25.    In addition to monetary damages, Plaintiff seeks injunctive and declaratory relief to

6

correct Uber's unlawful policies and practices as well as attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### (Uber's Violations of the NYCHRL's Disparate Impact Provision)

26.    Plaintiff repeats realleges all the paragraphs numbered 1 - 25  hereinabove as if each were individually set forth and alleged separately hereafter.

27.    The NYCHRL provides that, "[a]n unlawful discriminatory practice based upon disparate impact is established when . . . a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter." N.Y.C. Admin. Code § 8-107(17)(a)(1).

28.    Uber denied employment to Plaintiff  based in whole or in part on the criminal history information contained in alleged reports of crimes, without complying with any of the Fair Chance Act provisions of the NYCHRL.

29.    Uber's policy of barring current and potential drivers with criminal history in New York City from its platform without engaging in the Fair Chance Act process has a disparate impact on Black and Latinx individuals, who are more likely to have criminal histories, and who would benefit from Uber's legal obligation to engage in the required Fair Chance Act process and from the opportunity to explain their alleged criminal history and respond to Uber's concerns.

30.    Uber's policy creates a significant barrier to Black and Latinx individuals in New York City who drive for Uber or wish to drive for Uber that is neither job-related nor consistent

with business necessity.

31.    Uber's wholesale noncompliance with the Fair Chance Act provisions of the NYCHRL are not and cannot be job-related or consistent with business necessity.

32. There are far less discriminatory alternatives available to Uber that would have better achieved any legitimate driver workforce interests Uber may have. For example, Uber could have complied in the first instance with the Fair Chance Act provisions of the NYCHRL.

33. Due to Uber's conduct, Plaintiff has been deprived of his rights and has lost income-earning opportunities with Uber.

34. Plaintiff seeks injunctive and declaratory relief to correct Uber's discriminatory policies and practices as well as monetary relief, including compensatory damages, and attorney's fees and costs.

THIRD CLAIM FOR RELIEF
(Uber's Violations of the FCRA)

35.    Plaintiff repeats realleges all the paragraphs numbered 1 - 34 hereinabove as if each were individually set forth and alleged separately hereafter.

36.    The FCRA prohibits any company from using a report in whole or in part to take adverse action against an employee unless that company has provided the employee with a pre-adverse action notice that includes a copy of the report and a written description of FCRA rights. 15 U.S.C. § 1681b(3)(A). The purpose of this provision is to permit consumers an opportunity to: (a) learn that adverse action may be taken; (b) review the consumer report that forms the basis for

8

the adverse action; (c) correct any inaccuracies before any adverse action is taken; and (d) be informed of their rights under the FCRA.

37.     The FCRA also requires any company actually taking adverse action against an employee to provide that employee with a written adverse action notice, which must inform the consumer that adverse action has been taken based on information found in a report and must also include the following: (i) contact information for the CRA that provided the report; (ii) a statement that the CRA is not the party taking the adverse action and cannot supply a reason for the adverse action; (iii) notice of the applicant's right to obtain a second report, free of charge, from that same CRA within a time period not to exceed 60 days; and (iv) a disclosure of the employee's rights under the FCRA, including the right to dispute the information contained in the report, relative to accuracy and completeness. 15 U.S.C. § 1681m(a).

38.     Uber willfully violated the FCRA by failing to provide Plaintiff before taking adverse action against him, with a pre-adverse action notice, including all required disclosures and a copy of their consumer reports, and then failing to provide Plaintiff after taking adverse action against him, with an adverse action notice, including all required disclosures. Uber's conduct was knowing and reckless because it utterly failed to comply with the statute and provide any of the required documents or disclosures before taking adverse action against Plaintiff.  At the bare minimum, Uber's conduct was reckless because it failed to make an appropriate inquiry to ascertain its obligations under the FCRA.

39.     Uber's policy caused concrete injury (including the risk of harm) to Plaintiff because it deprived him of the opportunity to:

9

(i) Evaluate information contained in the report or complaint of a crime against Plaintiff to ensure accuracy;

(ii) Challenge and correct that information;

(iii) Explain the circumstances surrounding that information (even if accurate);

(iv) Explain why information reported should not preclude employment; and

(v) Explain why information that was different on the consumer report than the application should not preclude employment.

40.    Because Uber's conduct in violating the FCRA was willful, Plaintiff seeks statutory damages, punitive damages, and attorney's fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## FOURTH CLAIM FOR RELIEF

### (Uber's Violations of the NY FCRA)

41.    Plaintiff repeats realleges all the paragraphs numbered 1 - 40 hereinabove as if each were individually set forth and alleged separately hereafter.

42.    Uber procured reports containing information of a crime allegedly committed by Plaintiff.  Uber took adverse actions against Plaintiff based in whole or in part on the information contained in the alleged criminal complaint or report.

43.    Before taking these adverse actions, Uber failed to provide Plaintiff  with a copy of Article 23-A of the Correction Law, in violation of N.Y.Gen. Bus. Law § 380-g(d).

44.    Due to Uber's actions, Plaintiff was deprived of his rights and prevented from timely and effectively contesting the adverse action.

45.     Uber's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in N.Y. Gen. Bus. Law § 380-g(d).

46.     Uber's willful conduct is further reflected by the fact that Uber has had years to become compliant with the NY FCRA and still fails to comply.

47.     Uber's willful negligent conduct makes it liable for actual damages, punitive damages, and attorney's fees and costs, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-1.

### PRAYER FOR RELIEF

48.     WHEREFORE, Plaintiff prays for relief as follows:

(i) A declaratory judgment that the practices complained of herein are unlawful and violate the NYCHRL, FCRA, and NY FCRA;

(ii) An injunction against Uber and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

(iii) An order forbidding Defendant from engaging in further unlawful conduct against Plaintiff in violation of the NYCHRL, FCRA, and NY FCRA;

(vi) An award of actual, real, and/or statutory damages for Defendant's willful conduct;

(vii) Punitive damages to deter future misconduct in an amount commensurate with Defendant's ability to pay;

(viii) Costs incurred herein, including reasonable attorney's fees to the extent

11

allowable by law;

(ix) Pre-judgment and post-judgment interest, as provided by law;

(x) Such other and further legal and equitable relief, including nominal damages, as this Court

deems necessary, just, and proper.

(xi) An award of reasonable attorneys' fees and the costs of this action including attorneys' fees

for representation before the EEOC as required before commencing proceedings in this federal

action;

(xii) An award of commensurate damages as may be adjudged by a jury against Uber for

violation of the Civil Rights of Plaintiff.

And

Such other and further relief as this Court may deem just and proper.

Dated:  New York, New York.
        August 13, 2024.

Michael Ugwu, (Pro Se)
47 Owen Circle Drive
Selden New York 11784
(631)504-2925

EEOC Determination for 520-2023-07348 RE: EEOC Charge 520-2023-07348, Michael Ugwu v. Uber Technologies, Inc. RE: Update

From: ANDREA MACANCELA (andrea.macancela@eeoc.gov)

To:      fremik09@yahoo.com

Date:  Thursday, May 30, 2024 at 10:33 AM EDT


Good Morning Mr. Ugwu,

Thank you for speaking with the EEOC this morning regarding charge 520-2023-07348, against Uber Technologies, Inc.

**Your allegations**:
You made allegations based on Title VII race, color and sex discharge. You stated that your account was deactivated after Uber received a complaint from an unknown passenger.

**Respondents allegations**:
The EEOC received the Respondent's position statement. The Respondent stated that you are an independent contractor.

**EEOC determination**:
For the EEOC, an individual is only protected if s/he was an employee at the time of the alleged discrimination rather than an independent contractor. Factors that indicate an employment relationship with an employer include the following:
- The employer has the right to control when, where and how the worker performs the job
- The work does not require a high level of skill or expertise
- The employer furnishes the tools, materials and equipment
- The work is performed on the employer's premises
- The employer sets the hours of work and the duration of the job
- The work performed by the worker is part of the regular business of the employer
- The worker is not engaged in his/her own distinct occupation or business
- The worker is considered an employee of the employer for tax purposes (i.e., the employer withholds federal, state and Social Security taxes)

This list is not exhaustive, as there may be other aspects of the relationship between the parties that may affect the determination of whether an employer-employee relationship exists. You were given the position statement on 12/6/2023. You provided your rebuttal statement to the EEOC on 12/15/2023.

The EEOC is a neutral civil rights law enforcement agency. Our responsibility is to process the charges filed with us in a fair and objective manner to determine whether the laws we enforce have been violated. We understand that the parties to a charge often have firm views that the available evidence supports their respective positions. However, our final actions must comport with the relevant evidence and the laws we enforce. Due to the above, the Commission is closing out your charge of discrimination against Uber Technologies. The EEOC does not cover independent contractors. The Commission cannot move forward with your charge. At this time, the Commission has presented you with a closure notice that includes a notice of right to sue to pursue your case further in federal court. Within 90 days of today you can file the notice of right to sue in federal court. The Commission has provided you the attached document regarding information in filing an employment discrimination suit.

Kind regards,

Andrea Macancela
EEOC Investigator
33 Whitehall Street
New York, NY 10004

From: Michael Ugwu <fremik09@yahoo.com>
Sent: Wednesday, May 29, 2024 10:47 PM
To: ANDREA MACANCELA <ANDREA.MACANCELA@EEOC.GOV>
Subject: Re: EEOC Charge 520-2023-07348, Michael Ugwu v. Uber Technologies, Inc. RE: Update

Good evening,

For almost one year now Uber has unjustly blocked my main source of income. The delays by EEOC in resolving this issue has further resulted in many health issues including a heart surgery and other health issues. My mind has not been at rest.

I have a masters degree in Industrial Technology. Raised in a royal family with zero issues involving ladies from my youthful age. I will love Uber Technologies to produce the women, one of whom they lied said police refused to come as I was waiting in front of her house. These kind of blatant false accusations, to me, require immediate actions.

I, therefore, appeal to you to use your good offices to assist me. A look at my records with Uber will show 14,000+ trips and a 5 points rating after 8 years of driving for them before I was terminated. Thanks for kind help.

Michael N. Ugwu

Sent from Yahoo Mail for iPhone

On Tuesday, March 19, 2024, 1:20 PM, ANDREA MACANCELA <ANDREA.MACANCELA@EEOC.GOV> wrote:

Good Afternoon,

Thank you for your email. The Commission does not have an update at this time. Should we need additional information from you, we will reach out. Our website provides clarification as well (https://www.eeoc.gov/what-you-can-expect-after-you-file-charge): How long the investigation takes depends on many factors, including the amount of information that needs to be gathered and analyzed. On average, we take approximately 10 months to investigate a charge. We are often able to settle a charge faster through mediation (usually in less than 3 months). You can check the status of your charge by using EEOC's Online Charge Status System.

If the Commission needs additional information, we will reach out to you.

Thank you.

Kind regards,

Andrea Macancela
EEOC Investigator
33 Whitehall Street
New York, NY 10004

-----Original Message-----
From: Michael Ugwu <fremik09@yahoo.com>
Sent: Tuesday, March 19, 2024 12:23 PM
To: ANDREA MACANCELA <ANDREA.MACANCELA@EEOC.GOV>
Subject: Update

CAUTION: The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Hi Andrea,

May I know if you have any updates on my case?

Thanks.
Michael N. Ugwu
631-504-2925

 Facts About Filing An Employment Discrimination Suit.pdf
19.7kB